UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

ALEXANDER FAISON,

                       Petitioner,          07 Civ. 8561 (JGK)

       - against -               MEMORANDUM OPINION
                                        AND ORDER

HAROLD MCKINNEY,

                     Respondent.
───────────────────────────────

JOHN G. KOELTL, District Judge:

    This is a petition for habeas corpus pursuant to 28 U.S.C.
§ 2254 brought by New York State prisoner Alexander Faison (the
"petitioner").  After a jury trial, the petitioner was convicted
of one count of Burglary in the Second Degree and sentenced as a
second violent felony offender to a determinate term of
imprisonment of eight years.  The petitioner claims (1) his
conviction was against the weight of the evidence ("Claim I" of
the petition); (2) the trial court erroneously permitted
testimony concerning other crimes to be presented to the jury
("Claim II"); (3) the prosecutor's comments in summation
violated the petitioner's due process rights ("Claim III"); (4)
the petitioner's defense counsel failed to pursue adequately
several trial motions ("Claim IV"); (5) the defense counsel
failed to provide the petitioner with effective assistance of
counsel as guaranteed by the Sixth Amendment ("Claim V"); and
(6) the petitioner was illegally denied the opportunity to

challenge the constitutionality of his prior convictions.
("Claim VI").


**I.**

There was sufficient evidence at trial for the jury to find the following facts.

On the morning of December 14, 2000, Barbara and Alvin Merrifield had an argument in their home that resulted in Mr. Merrifield striking Mrs. Merrifield in the face. (Trial Transcript ("Tr.") 268-69, 371-72.) The argument arose out of Mr. Merrifield's discovery of Mrs. Merrifield's telephone conversation with the petitioner, with whom Mrs. Merrifield had a romantic relationship at the time. (Tr. 265-66.) Mrs. Merrifield then called the police and also made two phone calls to the petitioner. (Tr. 312-14.) The police arrived shortly after the argument to settle the dispute, but chose not to arrest either of the Merrifields. (Tr. 271, 372.) Soon after the police left, the petitioner, accompanied by two unnamed individuals, forcibly entered the Merrifields' home. (Tr. 274-75, 376-77.) Once inside, the petitioner grabbed Mr. Merrifield, knocked him to the floor, held him down, and threatened him. (Tr. 274-78, 374-76, 476.) Shortly after the attack, one of the petitioner's associates convinced the petitioner to allow Mr. Merrifield to leave. (Tr. 279, 357-58.)

Mr. Merrifield then fled his home, contacted the police, and
went to the Westchester Square Medical Center Emergency Room
seeking treatment for his injuries.  (Tr. 358, 380-86, 432-35.)
Three days after the attack, Mr. Merrifield spoke with Detective
Abate of the New York Police Department's 43rd Precinct about
the December 14 incident; although Detective Abate did not
testify at trial, the parties stipulated that Mr. Merrifield
told Detective Abate that he did not have any visible injuries
and that Detective Abate did not observe any.  (Tr. 507.)
Detective Abate closed the case the same day.  (Tr. 507.)

    Also testifying at the trial was Tammy Evans, a friend of
Mrs. Merrifield.  (Tr. 270-72.)  Ms. Evans came to the
Merrifields' home at Mrs. Merrifield's request, and Ms. Evans
testified that she witnessed the petitioner enter the
Merrifields' home and the subsequent attack.  (Tr. 476-77.)

    Evidence of two subsequent incidents between the petitioner
and the Merrifields was introduced at trial to demonstrate the
petitioner's aggressive intent.  Shortly after Mrs. Merrifield
ended her romantic relationship with the petitioner in February,
the petitioner attempted to enter Mrs. Merrifield's apartment on
March 12, 2001, demanding to speak with her, kicking at her door
and beating the lock before leaving when she threatened to call
the police.  (Tr. 288-90.)  The final incident occurred on March
15, 2001, when the petitioner returned to the Merrifields' home,

rang the doorbell and left, but then proceeded to call Mrs.
Merrifield "fifteen to twenty times." (Tr. 292-93.) Mrs.
Merrifield testified that she reported this incident to the
police as well. (Tr. 292-93.)

On October 9, 2002, the jury trial commenced in the New
York State Supreme Court, Bronx County. The Indictment returned
against the petitioner on April 3, 2001, charged the petitioner
with eleven criminal counts arising from the three incidents.
(See Pimentel Decl. ¶ 5 & Ex. 1.) The Indictment included two
counts of Burglary in the First Degree, a count of Burglary in
the Second Degree, and a count of Assault in the Third Degree.
(See Pimentel Decl. Ex. 1.) The Indictment was defective in
that it failed to include the term "and unlawfully" as an
element of the offense in any of the three listed counts of
first and second-degree burglary. (See Pimentel Decl. Ex. 1.)
However, the trial court granted the prosecutor's application to
amend the Indictment to include the missing term, without
objection from defense counsel. (Tr. 251-52.)

Ultimately, the trial court submitted to the jury only four
counts: the two counts of Burglary in the First Degree, in the
alternative, a single count of Burglary in the Second Degree,
and, in the alternative to the Burglary in the Second Degree
count, the single count of Assault in the Third Degree, all
arising out of the December 14 incident. The court did not

submit to the jury any of the counts relating to the March incidents, none of which charged a felony.  On October 15, 2002, the petitioner was convicted of Burglary in the Second Degree under New York Penal Law § 140.25, which provides that a person is guilty of Burglary in the Second Degree when a person "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" and the building is a dwelling.  At his November 7, 2002 sentencing hearing, the petitioner was adjudicated a second violent felony offender and sentenced to a determinate term of imprisonment of 8 years.

The petitioner, represented by new counsel, filed a timely direct appeal and also filed additional grounds for appeal in a pro se supplemental brief.  The New York State Supreme Court, Appellate Division, First Department, unanimously affirmed the petitioner's conviction on March 3, 2005, rejecting all of the petitioner's claims.  See People v. Faison, 792 N.Y.S.2d 21 (1st Dept. 2005).  The court noted that there is "no basis for disturbing the jury's determinations concerning credibility," and that "the [petitioner] received effective assistance of counsel."  Id.  The petitioner's application for leave to appeal to the New York State Court of Appeals was denied on May 25, 2005.  See People v. Faison, 831 N.E.2d 976 (N.Y. 2005).

On June 13, 2006, the petitioner moved pro se before the New York State Supreme Court to (1) vacate the judgment of

conviction pursuant to New York Criminal Procedure Law § 440.10, asserting that he had been denied effective assistance of counsel at trial; and (2) to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20, claiming that he wrongfully was adjudicated a second violent felony offender. (See Pimentel Decl. Ex. 7.)  In a thorough opinion, the trial court summarily denied the petitioner's motions to vacate his conviction by an order dated February 15, 2007.  (See Pimentel Decl. Ex. 11.)  The trial court held that all but one of the petitioner's motions were procedurally barred from consideration because they were apparent on the face of the record and, thus, should have been raised on direct appeal.  (See Pimentel Decl. Ex. 11.)  In any event, the trial court held that all of the petitioner's motions were without merit.  (See Pimentel Decl. Ex. 11 at 31.)

The petitioner's application for leave to appeal the trial court's order to the Appellate Division was denied on May 21, 2007.  (See Pimentel Decl. Ex. 12.)  This petition for a writ of habeas corpus followed.

## II.

### A.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus

relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2); see also Knowles v. Mirzayance, 129 S.Ct. 1411, 1414-15 (2009).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision involves "an unreasonable application of . . . clearly established Federal law" when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Id. at 407-08.

To meet that standard, "the state court decision [must] be more than incorrect or erroneous;" it "must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  "[I]t is well established in [this] [C]ircuit that the

objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotation marks omitted).

Because the petitioner is proceeding pro se, his petition is "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (holding that pro se allegations of habeas corpus petitioners are to be liberally construed); Williams v. Breslin, 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003).

### B.

The petitioner's first argument is that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt and therefore his conviction was against the weight of the evidence. Because a habeas petition based on the weight of the evidence is not cognizable on habeas review, the Court liberally construes the petitioner's claim to allege the evidence for the conviction was legally insufficient. See Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Unlike a sufficiency of the evidence claim, which is based

upon federal due process principles, a weight of the evidence claim is 'an error of state law, for which habeas review is not available.'") (quoting Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002)).

The petitioner claims that (1) the prosecution's witnesses provided inconsistent testimony regarding the petitioner's entry; (2) the prosecution failed to prove beyond a reasonable doubt that the petitioner unlawfully entered the Merrifield's home; and (3) the prosecution failed to prove beyond a reasonable doubt that the petitioner intended to commit a crime upon entering.

A petitioner challenging the sufficiency of the evidence supporting the conviction must overcome a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). A reviewing court must view "the evidence in the light most favorable to the prosecution," and may only grant habeas relief if the petitioner has shown that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979); see also Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983). In making this determination, a reviewing court may not "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402 (1993) (quoting Jackson, 443 U.S. at 320 n.13). To the contrary, the reviewing court

must defer to the jury in making "assessments of the weight of
the evidence or the credibility of witnesses" and construe "all
possible inferences that may be drawn from the evidence" in the
prosecution's favor.  Maldonado v. Scully, 86 F.3d 32, 35 (2d
Cir. 1996).  "Guilt beyond a reasonable doubt may be established
entirely by circumstantial evidence, and this evidence must not
be reviewed piecemeal, but rather as a whole."  Id. (internal
citations omitted).

     In reviewing the legal sufficiency of the evidence of a
state conviction, this Court looks first to state law to
determine the elements of the crime.  Quartararo v. Hanslmaier,
186 F.3d 91, 97 (2d Cir. 1999).  Under the New York Penal Law, a
person is guilty of Burglary in the Second Degree when the
person "knowingly enters or remains unlawfully in a building
with intent to commit a crime therein" and the building is a
dwelling.  N.Y. Penal Law § 140.25(2).  Under New York law, a
person "enters or remains unlawfully in or upon premises when he
is not licensed or privileged to do so, meaning that he had not
obtained the consent of the owner or another whose relationship
to the premises gives him authority to issue such consent."
People v. Quinones, 570 N.Y.S.2d 26 (App. Div. 1991) (quotation
marks and citation omitted).

     Viewed in the light most favorable to the prosecution, the
evidence produced at trial was sufficient for a rational trier

of fact to find beyond a reasonable doubt that the petitioner, lacking the privilege to do so, and without consent, knowingly and unlawfully entered the Merrifields' home with the intent to commit a crime therein.  At trial, all three witnesses identified the petitioner as the man who forcibly entered the apartment, and all three further testified that they saw the petitioner use physical violence against Mr. Merrifield.  The evidence further showed that Mr. Merrifield called the police shortly after the attack and went to the hospital to receive treatment for whatever injuries he may or may not have sustained.

While the petitioner argues in his brief that the evidence presented by the Government was not legally sufficient, a rational juror could have concluded that the petitioner forcibly entered the Merrifields' home and attacked Mr. Merrifield.  A rational juror could have concluded that, contrary to the petitioner's assertions, Mrs. Merrifield did not ask the petitioner for help and did not invite the petitioner into the apartment.  A rational juror also could reasonably have concluded the petitioner intended to assault Mr. Merrifield. The evidence showed that he quickly rushed into the Merrifield's apartment, that he brought two men with him, and that he immediately attacked Mr. Merrifield.  While the petitioner challenges the credibility of the prosecution's witnesses, the

Appellate Division reasonably found that there was no basis to
interfere with the jury's determination of the credibility of
the eye-witnesses.  See, e.g., Maldonado, 86 F.3d at 35 (noting
that assessments of credibility of witnesses are for jury).  The
petitioner's challenge to the Merrifields' and Ms. Evans'
credibility is insufficient to show that no rational juror
reasonably could have concluded that the petitioner committed
the offense for which he was convicted.  Therefore, the
petitioner's habeas claim fails because he has not established
that the Appellate Division's determination that the evidence
was legally sufficient to prove the petitioner's guilt was
contrary to, or based on an unreasonable application of, clearly
established federal law.

### C.

     Second, the petitioner contends that the trial court
improperly permitted evidence of uncharged crimes.
Specifically, the petitioner argues the trial court: (1)
erroneously permitted testimony concerning other consecutive
crimes to be offered to the jury without weighing the likelihood
of unfair prejudice; (2) failed to submit those charges to the
jury; and (3) provided a jury instruction that fell short of the
trial court's obligation to instruct the jury on the weight such
admitted evidence could bear on the remaining charges.  The

petitioner argues that the combined effect of these errors was
so prejudicial that he was denied his due process right to a
fair trial guaranteed by the Fourteenth Amendment.

The petitioner argues that the trial court's decision to
withhold the charges relating to the March incidents alleged in
the Indictment from its jury charge was an instance of
"retroactive misjoinder," which the Court of Appeals for the
Second Circuit has held arises in federal cases "where joinder
of multiple counts was proper initially, but later developments-
such as a district court's dismissal of some counts for lack of
evidence or an appellate court's reversal of less than all
convictions-render the initial joinder improper." See United
States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994).  In those
circumstances, a defendant must show "compelling prejudice."
Id.  The petitioner claims that the evidence and testimony the
Government presented at trial regarding the charges relating to
the March 12 and March 15 incidents and the ultimate dismissal
of those charges was an instance of such misjoinder, and thus
the evidence was unfairly presented to the jury.  He argues that
this admission was so prejudicial that he was denied his due
process right to a fair trial.

The petitioner's argument relies on the trial court's
alleged misapplication of New York State Criminal Procedural Law
§ 300.40, Subdivision 4, which provides:

13

"If a multiple count indictment contains two or more groups of counts, with the counts within each group being concurrent as to each other but consecutive as to those of the other group or groups, the court must submit at least one count of each group . . . .  If an indictment contains one or more of such groups of concurrent counts, and also one or more other counts each of which is consecutive as to every other count of the indictment, the court must submit each individual consecutive count and at least one count of each group of concurrent counts."

N.Y. Crim. Pro. Law § 300.40(4).  However, the section also provides:

"The court may submit to the jury only those counts of an indictment remaining therein at the time of its charge which are supported by legally sufficient trial evidence, and every count not so supported should be dismissed by a trial order of dismissal."

Id. § 300.40.  Furthermore, New York state law allows a trial court to admit evidence of uncharged crimes when that evidence "is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged. Even then, such evidence is admissible only upon a trial court finding that its probative value for the jury outweighs the risk of undue prejudice to the defendant."  People v. Till, 661 N.E.2d 153, 154 (N.Y. 1995) (collecting cases); see also People v. Vails, 372 N.E.2d 320, 323 (N.Y. 1977) (holding evidence "inextricably interwoven" with crime charged in indictment may be received in evidence where probative value of evidence clearly outweighs any prejudice); People v. Molineux, 61 N.E. 286, 293-94 (N.Y. 1901) (naming categories of prosecution

14

theories for which evidence of other crimes is admissible in effort to prove specific crime charged).

"It is well-established that a federal habeas court 'is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" See Roldan v. Artuz, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  "In general, rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue." Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995); see also Estelle, 502 U.S. at 75 n.5 (expressing "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").  The introduction of unfairly prejudicial evidence is contrary to both state and federal law. Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).  However, not all erroneous admissions of evidence are errors of a constitutional dimension.  Id.  "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."  Id. (internal quotation marks and citation omitted).

There is no basis to conclude that the state trial court violated New York Criminal Procedure Law § 300.40(4), or

that an objection on that basis was preserved at trial, and, in
any event, a violation of that provision raises simply a
question of state law that is not a basis for federal habeas
relief.  There is also no basis to conclude that there was a
"retroactive misjoinder" because the petitioner cannot point to
any evidence that was improperly introduced and which prejudiced
him.  The only improper evidence that the petitioner points to
in his appellate and habeas briefs is that the trial court
allegedly erred in admitting testimony of harassing telephone
calls the petitioner made to Mr. Merrifield after the December
14 incident.  (See Pet'r's Traverse 1-3.)  However, the evidence
of the subsequent calls was probative of the defendant's motive
and intent, and was inextricably interwoven with the narrative
of the events that formed the substance of the charges that were
submitted to the jury.[1]  Indeed, the defendant's trial counsel
indicated she had no objection to the admission of such
evidence.  (Tr. 237.)  Moreover, there is no showing of unfair
prejudice.  The challenged testimony consumed less than two
pages of testimony and was not inflammatory.  (Tr. 387-89.)
There is, therefore, no basis for federal habeas relief on this
claim.

---

[1] The judge properly instructed the jurors that they were not to speculate why
the court was not submitting additional charges included in the Indictment.
(Tr. 563.)

**D.**

The petitioner's third argument is that the prosecutor's summation was unfairly prejudicial and denied him due process. The claim is unavailing because the petitioner has failed to demonstrate that the remarks were unfairly prejudicial.  As a result, the Appellate Division's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

It is well-settled that in order for a prosecutor's comments in summation to reach the level of a constitutional violation, the remarks must "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1973); see also Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991). "Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused 'substantial prejudice' to the defendant." Gonzalez, 934 F.2d at 424.  Moreover, a "criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." Id. (quoting United States v. Young, 470 U.S. 1, 11 (1985)).  In other words, the burden is on the petitioner to show that the prosecutorial conduct caused "substantial prejudice." United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam); see also Floyd v. Meachum, 907 F.2d

347, 355 (2d Cir. 1990) (stating three-factor test for determining "substantial prejudice" from prosecutor's summation, including severity of misconduct, measures adopted to cure misconduct, and certainty of conviction absent improper statements).  In applying this standard, the Court of Appeals for the Second Circuit has noted that "[r]emarks of a prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct."  United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2000) (internal quotation marks omitted).

The petitioner claims that the prosecutor misrepresented facts in summation by stating that the petitioner had kicked in the downstairs door to the apartment, specifically:

> "Look at the way [the petitioner] came in.   The downstairs door was kicked in and the lock was broken . . . .   What Tammy Evans' testimony did was to confirm to you on that date she was able to push open the door downstairs.   And why, because [the petitioner] had already kicked it in and broken the lock . . . .   And that's exactly what the Merrifields told you too, that once that lock was broken, you could push that door."

(Tr. 543-44.)   The petitioner argues that there was no evidence or testimony presented at trial that the petitioner had kicked in or otherwise broken the lock of the downstairs door in his entry of the apartment.   The petitioner contends that the prosecutor continued to recount the evidence inappropriately to

the jury in her next statement, when the prosecutor told the

jury:

> "And think about the other times that you have heard
> about.  Although you are not going to deliberate about
> whether crimes occurred on those other dates in March,
> you can consider that evidence.  How many times did
> you hear about [the petitioner] kicking in doors in
> this case. . . . [the petitioner] has had a lot of
> experience kicking in[ ]doors. . . .  You think [the
> petitioner] is going to be stopped by a door with a
> cheap little lock on it[?]"

(Tr. 544.)

There were no objections or motions for a mistrial in

response to the statements.  The statements by the prosecutor

do not rise to the level of prosecutorial misconduct.  <u>See,</u>

<u>e.g.</u>, <u>Darden v. Wainwright</u>, 477 U.S. 168, 180-81 & n.12 (1986).

The prosecutor's statements must be viewed in light of the fact

that the comments were made in response to defense counsel's

summation, which called the Government's witnesses liars:  "But

I would suggest to you that [the witnesses] are [liars] . . .

the worse [sic] two being Barbara and Alvin Merrifield."  (Tr.

511.)  Defense counsel also attacked the truthfulness of Mr.

Merrifield's testimony regarding whether the downstairs lock was

broken:  "[Ms. Evans] told you that the downstairs lock, the

outside door, you don't need a buzzer to get in, you don't need

a key to get in, it's just open. . . .  The downstairs door had

no lock and therefore the lock can't be broken like [Mr.

Merrifield] told you it was."  (Tr. 527).  Mr. Merrifield had

indeed testified that the lock on the door to the outside was broken and it had not been broken when he had left his apartment earlier in the day before the incident.  (Tr. 381-82.)  Viewed in light of this testimony and the defense summation, the prosecutor's statements were fair comments on the evidence in response to the defense argument.  See, e.g., Darden, 477 U.S. at 182-83; see also Dunn v. Sears, 561 F. Supp. 2d 444, 455-56 (S.D.N.Y. 2008).  The fact that there was no objection to the comments underscores that the defense counsel did not perceive the comments to be unfair.  See, e.g., Malley v. Manson, 547 F.2d 25, 28 (2d Cir. 1976) (holding that when evaluating habeas corpus claims alleging prosecutorial misconduct in summation, "absence of contemporaneous objections or requests for cautionary instructions are factors to be taken into consideration").

Finally, the jury was instructed that only its recollection of the evidence controlled (Tr. 509.), and there is no reason to believe that the jury in this case was unduly influenced by these or any other statements of what the prosecutor contended that the evidence showed.  See Roldan, 78 F. Supp. 2d at 281 (collecting cases).

In sum, the prosecutor's statements in summation were not so egregiously improper or prejudicial to constitute a violation of due process, and it cannot be said that the Appellate

Division's rejection of the petitioner's claim was contrary to, or an unreasonable application of, clearly established federal law.  Therefore, Claim III of the petition for habeas relief is denied.

### E.

In his fourth, fifth, and sixth claims for habeas relief, the petitioner argues that his defense counsel's performance at trial was so ineffective that he was denied his Sixth Amendment right to counsel.  Specifically, in his fourth claim, the petitioner argues that his defense counsel was ineffective in (1) failing to object to the prosecutor's summation comment; (2) failing to request a missing witness charge for Detective Abate; and (3) failing to move to dismiss the non-felony charges in the Indictment.  In his fifth claim, the petitioner further contends that his defense counsel (1) deprived him of his statutory and constitutional right to be present at all critical periods of the trial; (2) forced him to avoid testifying based on the "trial court's Sandoval ruling and defense counsel's incompetence"; (3) failed to protect the petitioner's right not to have an unfavorable inference drawn from his decision not to testify; (4) was instrumental in causing the commingling of crimes and the homogenization of the evidence without proper jury instructions; and (5) failed to object to the oral

21

amendment of the Indictment.  In his sixth claim, the petitioner argues that his defense counsel's inadequate representation denied him the opportunity to challenge the constitutionality of his prior convictions.

The petitioner's claims do not warrant any habeas relief.

**1.**

The state trial court relied upon a procedural bar to dismiss all but one of the claims the petitioner raised in his post-conviction motion alleging ineffective assistance of counsel, including claims that defense counsel:  (1) deprived the petitioner of his right to be present at a charge conference; (2) deprived the petitioner of his right to be present at all material stages of his trial by excluding him from the conference where defense counsel entered into a stipulation regarding Detective Abate's testimony; (3) failed to protect the petitioner's Sandoval interests; (4) inappropriately commented on the petitioner's right not to testify; (5) failed to object to the introduction of evidence regarding the March incidents; (6) failed to request a jury charge that the March incidents not be considered during deliberations; and (7) violated petitioner's rights established under Crawford v. Washington, 541 U.S. 36 (2004), by entering into the stipulation regarding Detective Abate's testimony.  (Pimentel Decl. Ex. 11

at 9-22.)[2]  The trial court held further that, in any event, all of the petitioner's claims were without merit.  (Pimentel Decl. Ex. 11 at 9-22.)

The state court rejected the claims because it found that they were claims apparent on the face of the record and thus should have been raised on direct appeal.[3]  Here, the petitioner's constitutional claim alleging ineffective assistance of counsel on the same grounds is procedurally barred because the state court's rejection of his claim pursuant to New York Criminal Procedure Law § 440.10 is an independent and adequate state law ground prohibiting review.  See, e.g., Colon v. New York, No. 08 Civ. 0170, 2009 WL 1116478, at *2 (S.D.N.Y. Apr. 27, 2009) ("[E]ven when a petitioner presents a colorable federal constitutional claim, federal habeas review is barred if the claim was denied by a state court on a state procedural

---

[2] The trial court found that one claim the petitioner raised in his motion pursuant to New York Criminal Procedure Law § 440.10 was not procedurally barred.  That claim asserted that defense counsel failed to inform him that the charges relating to the March incidents would not be submitted to the jury and that this interfered with his decision whether to testify.  The trial court denied this claim on the merits.  (Pimentel Decl. Ex. 11 at 10-12.)  This claim is discussed below.  The state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

[3] New York Criminal Procedure Law § 440.10(2)(c) provides in relevant part that "the court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . ."

ground that is both ''independent' of the merits of the federal
claim and an 'adequate' basis for the court's decision.'") 
(quoting <u>Harris v. Reed</u>, 489 U.S. 255, 260-61 (1989)).

It is well-settled that where "a state prisoner has
defaulted his federal claims in state court pursuant to an
independent and adequate state procedural rule, habeas review of
the claims is barred unless the prisoner can demonstrate cause
for the default and actual prejudice as a result of the alleged
violation of federal law, or demonstrate that failure to
consider the claims will result in a fundamental miscarriage of
justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>see
also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002); <u>Cotto v. Herbert</u>,
331 F.3d 217, 238 (2d Cir. 2003); <u>Ashley v. Burge</u>, No. 05 Civ.
4497, 2006 WL 3327589, at *4 (S.D.N.Y. Nov. 3, 2006).

In this case, the state court explicitly relied on an
independent state procedural ground in rejecting the
petitioner's claim.[4]  Indeed, the Court of Appeals for the Second
Circuit has found that the failure to raise a claim on direct
appeal that appeared on the face of the record is a procedural
bar under New York law and, therefore, constitutes an

---

[4] The procedural default is based on an independent state ground despite the
state court's alternative ruling on the merits.  <u>See</u> <u>Harris</u>, 489 U.S. at 264
n.10 (noting that "a state court need not fear reaching the merits of a
federal claim in an <i>alternative</i> holding" because independent and adequate
state ground doctrine "curtails reconsideration of the federal issue on
federal habeas as long as the state court explicitly invokes a state
procedural bar rule as a separate basis for decision").

independent and adequate state ground for the rejection of the petitioner's claim.  See Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).  Accordingly, for this Court to grant habeas relief on a defaulted claim, the petitioner must demonstrate either (1) cause for and prejudice from the default, or (2) that a fundamental miscarriage of justice will result if this Court fails to hear the federal claim.  See, e.g., Colon, 2009 WL 1116478, at *3 (collecting cases).

The petitioner can demonstrate cause only if he "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 479 (1986).  This cause "must be something external to the petitioner, something that cannot fairly be attributed to him."  Coleman, 501 U.S. at 753.  While examples of such cause do include attorney error, "[a]ttorney error short of ineffective assistance of counsel [as established in Strickland] does not constitute [an objective, external] cause for [such] a procedural default."  Murray, 477 U.S. at 492; see also Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). To complete the cause and prejudice test, the petitioner must also establish that the ineffective assistance of counsel at trial worked to his actual prejudice.  To establish actual prejudice, a petitioner must show that the constitutional violation alleged "worked to his actual and substantial

disadvantage, infecting the entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982); <u>see also</u> <u>Murray</u>, 477 U.S. at 494.

The petitioner has failed to establish either cause or actual prejudice to excuse his failure to comply with the state procedural bar.  Notably, he has failed in his briefs to allege any cause for his failure to raise these claims on direct appeal that resulted in the state procedural default.  It is "well established that a pro se petitioner is not excused from showing cause merely because of his pro se status or ignorance of his rights." <u>Robertson v. Abramajtys</u>, 144 F. Supp. 2d 829, 838 (E.D. Mich. 2001) (collecting cases); <u>see also</u> <u>Udzinski v. Kelly</u>, 734 F. Supp. 76, 83-84 (E.D.N.Y. 1990).  On direct appeal, the petitioner was represented by new counsel and also submitted a pro se brief that was considered by the Appellate Division.

Neither can the petitioner demonstrate any actual prejudice to provide an exception to the independent and adequate state grounds doctrine.  The petitioner's first and second procedurally defaulted claims allege that defense counsel deprived him of his right to be present at the charge conference and at the stipulation conference regarding Detective Abate's testimony.  These claims are without merit.  The petitioner has the right to be present for trial proceedings "to the extent

26

that a fair and just hearing would be thwarted by his absence."
Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  However, there
is no violation of due process when the petitioner's presence
"would be useless, or the benefit but a shadow . . . ."  See id.
(internal citation and quotation marks omitted); see also
Edwards v. Fischer, 414 F. Supp. 2d 342, 361 (S.D.N.Y. 2006)
(holding that petitioner's absence from robing room conference
while judge discussed jury's deadlock note with prosecutor and
defense counsel and prosecutor requested Allen charge did not
frustrate fairness of proceedings, nor deny petitioner due
process of law, where matters discussed were purely legal).  The
Court of Appeals for the Second Circuit has found that a
defendant has no constitutional right to be present at a charge
conference dealing only with legal issues involved in
formulating jury instructions.  United States v. Rubin, 37 F.3d
49, 54 (2d Cir. 1994).  Here, the issues discussed at the charge
conference were legal and it was within the trial judge's
discretion to exclude the petitioner from the conference.  See
Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002).
Accordingly, no prejudice arises from the petitioner's claim
that defense counsel failed to ensure his presence at the charge
conference because the claim has no merit.

Furthermore, the defendant was not prejudiced by his
counsel's failure to assure the petitioner's presence at the

conference to discuss a stipulation regarding Detective Abate's
testimony.  The petitioner cites <u>People v. Dokes</u>, 595 N.E.2d
836, 838 (N.Y. 1992), for the proposition that "[petitioner] has
a right . . . to be present so that he could advise counsel of
any errors or falsities in the witness' testimony which could
have an impact on guilt or innocence."  (Pet'r's Traverse 10.)
However, there are no errors or falsities in the stipulation
that the petitioner could address because he was not present
when Detective Abate interviewed Mr. Merrifield.  Indeed, viewed
in the context of the entire trial, the stipulation cannot be
found to have any conceivable effect on the jury's verdict.  If
anything, the stipulation was of considerable value to the
petitioner because it placed before the jury the testimony of
Detective Abate that he did not observe any physical injuries on
Mr. Merrifield, while not allowing that testimony to be
impeached or cross-examined.  Moreover, the state court found,
when it rejected the petitioner's post-conviction motions, that
the petitioner acquiesced in the stipulation.  The court noted
that the petitioner's trial counsel had submitted an affidavit
that it was her practice never to agree to a stipulation without
her client's consent, and that the court read the stipulation
into the record both before and after the jury returned to the
courtroom without any comment by the defendant.  (Pimentel Decl.
Ex. 11 at 22.)

The petitioner's third procedurally defaulted claim that his defense counsel did not adequately protect his <u>Sandoval</u> interest is similarly not prejudicial.  The record demonstrates that defense counsel vigorously and adequately defended the petitioner's interests limiting the evidence of prior crimes that could be admitted at trial.  (<u>See</u> Pimentel Decl. Ex. 11 at 13-14.)  The petitioner fails to explain how the evidentiary rulings were erroneous, much less that his counsel was ineffective.

The petitioner's fourth procedurally defaulted claim alleges that defense counsel deprived him of his right not to have an unfavorable inference drawn against him from his decision not to testify by making certain statements during voir dire.  The petitioner has also failed to show that his counsel acted improperly or that he was prejudiced by his counsel's statements.  The statements petitioner complains about in the voir dire proceedings were part of the defense counsel's reasonable efforts to excuse jurors during voir dire if they would have been prejudiced against the petitioner if he decided not to testify.  Defense counsel's statement in her summation was a continued effort to remind the jury that the petitioner was not required to prove his innocence, and that the jury could not hold his decision not to testify against him.  (Pimentel Decl. Ex. 11 at 15-17.)  The efforts by defense counsel to

ensure that the jury would not be prejudiced by the defendant's failure to testify were not erroneous and, moreover, could not be found to have prejudiced the petitioner.

The petitioner's fifth and sixth procedurally defaulted claims allege that defense counsel should have objected to the introduction of evidence of the March 12 and 15 incidents and should have requested a jury instruction that the jury not consider the March 12 and 15 incidents in its deliberations. The petitioner has not shown that his counsel acted improperly or that he was prejudiced by his counsel's representation.  The March 12 and 15 incidents were the basis for charges in the Indictment and, therefore, defense counsel had no grounds to object to any evidence presented regarding their occurrence. Furthermore, in failing to request an instruction that the jury not consider the March 12 and 15 incidents in its deliberations, the defense counsel did not err because the trial judge would have denied a request for such an improper instruction.  As the trial court found in rejecting this claim in the § 440.10 motion, "[defense counsel could not have asked the Court to instruct the jury to disregard the evidence adduced in regard to the March events.  That evidence was admissible on the issues of the defendant's motive and intent . . . ." (See Pimentel Decl. Ex. 11 at 18.)  The trial judge gave the appropriate instruction by instructing the jurors not to speculate as to why other

counts in the Indictment were not submitted to the jury, and not to consider that in favor or against either side.  (Tr. 563.) Accordingly, it was not ineffective assistance and there was no prejudice from failing to ask for an incorrect instruction that would have been denied in any event.

The petitioner's seventh procedurally defaulted claim for relief alleges that defense counsel violated his due process rights by entering into the stipulation regarding Detective Abate's testimony.  The petitioner claims that entering into this stipulation violated the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him" as explained by the Supreme Court in Crawford.  The petitioner's claim is without merit.  The stipulation was submitted by the petitioner in lieu of his calling Detective Abate.  He was not deprived of his right to confront Detective Abate and he suffered no prejudice from the stipulation.  See Calvo v. Donelli, No. 06 Civ. 1794, 2007 WL 1288098 at **10-11, (E.D.N.Y. Apr. 30, 2007) (finding that where grand jury testimony was introduced on petitioner's behalf during petitioner's case and was favorable to him, record provided sufficient basis for concluding Confrontation Clause was not implicated).

The second exception to the independent and adequate state grounds doctrine also provides no basis for relief for the

petitioner because there is no basis to conclude that the
petitioner is actually innocent.  Therefore, this is not "an
extraordinary case, where a constitutional violation has
probably resulted in the conviction of one who is actually
innocent" that would constitute a "fundamental miscarriage of
justice" and excuse his failure to meet the requirements of New
York's preservation policy.  Murray, 477 U.S. at 495-96.

    Accordingly, this set of the petitioner's constitutional
claims alleging ineffective assistance of counsel are denied
because the state court's rejection of them rests on an
independent and adequate state ground, the exceptions to that
doctrine do not apply, and the claims are in any event without
merit as the state court found.

                              2.

    The petitioner also raised ineffective assistance of
counsel claims on his direct appeal.  Those claims were rejected
on the merits by the Appellate Division.  That decision cannot
be challenged unless it "was contrary to or involved an
unreasonable application of clearly established Federal law."
28 U.S.C. § 2254(d).  Claims alleging ineffective assistance of
counsel are evaluated under the two-part test set forth in
Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on
such claims, the petitioner must show both (1) that his
counsel's performance was so deficient that it was objectively

unreasonable under professional standards prevailing at the time; and (2) that counsel's deficient performance was prejudicial to the petitioner's case.  See Strickland, 466 U.S. at 687-88.  Self-serving conclusory allegations made by the petitioner to this effect are insufficient to establish ineffective assistance of counsel.  United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1099-1101 (2d Cir. 1992).

The petitioner cannot meet the first prong of the Strickland test merely by showing that his counsel employed poor strategy or made a wrong decision; instead, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (quoting Strickland, 466 U.S. at 687).  There is a "strong presumption" that the defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and the petitioner has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1985) (citing Strickland, 466 U.S. at 688-89).

To satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Knowles, 129 S.Ct. at 1411 (holding that relief may not be granted pursuant to § 2254(d)(1) based on argument that counsel was constitutionally ineffective merely for failing to pursue claim where there was "nothing to lose" by doing so); Dedushaj v. Graham, 07 Civ. 5401, 2008 WL 4858242, at *3 (S.D.N.Y. Nov. 7, 2008).

The petitioner's first claim alleges that defense counsel denied him due process by failing to object to the prosecutor's summation statements.  This claim, as discussed above, is meritless.  There is no evidence that the failure to object was an unreasonable error in strategy by defense counsel or that if defense counsel had objected, the outcome would have been different.  As explained above, the prosecutor's statements were fair comments on the evidence presented at trial and were responsive to defense counsel's summation.  The Appellate Division's decision rejecting the petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of, Strickland.

The petitioner argues that his defense counsel was ineffective in failing to seek a missing witness charge against the Government regarding Detective Abate.  This claim is without

34

merit because the stipulation regarding Detective Abate's testimony was offered by the defense in its case, and thus a missing witness charge would not make any sense.  The record demonstrates that defense counsel's decision to submit the stipulation fell within the wide range of reasonable discretion afforded to attorneys.  The Appellate Division's decision was not contrary to, or an unreasonable application of, Strickland.

The petitioner also argues that defense counsel was ineffective for failing to move to dismiss the charges related to the March incidents.  On his direct appeal, the Appellate Division rejected this argument.  The petitioner has failed to establish that the rejection was contrary to, or an unreasonable application of, Strickland.  The petitioner has not established any prejudice from the failure to move to dismiss these counts. The evidence supporting the counts was properly introduced, the counts themselves were never submitted to the jury, and the jury was instructed not to speculate why they were not submitted.

Similarly, the defense counsel's decision not to object to the amendment of the Indictment does not constitute a viable ineffective assistance of counsel claim.  The Appellate Division's rejection of this claim was not an unreasonable application of, or contrary to, Strickland.  Although the Indictment did not originally contain the words "and unlawfully," it clearly incorporated reference to the crimes

charged.  (See Pimentel Decl. Ex. 1.)  As such, the Indictment
validly incorporated all the statutory elements of the offenses
charged.  See People v. Ray, 522 N.E.2d 1037, 1038 (N.Y. 1988)
(where indictment failed to include term "unlawfully," clear
incorporation of statute charged provided fair notice of charge
and did not require dismissal); see also People v. Cohen, 421
N.E.2d 813 (N.Y. 1981) (per curiam).  Therefore, the Indictment
provided fair notice to the petitioner of the crimes charged and
he was not prejudiced by the amendment.  See also N.Y. Crim.
Proc. Law § 200.70(1) (permitting amendment of Indictment as to
matter of form).  Defense counsel cannot be held to be
ineffective for failing to make an objection that was not
warranted.

       The petitioner also claims that defense counsel failed to
inform him of the results of the pre-charge conference,
particularly the defense counsel's purported failure to inform
him that the counts relating to the March incidents would not be
submitted to the jury, which he argues deprived him of his right
to testify on his own behalf.  This claim was raised for the
first time in the petitioner's post-conviction § 440.10 motion.
The trial court found that this claim was not procedurally
barred and rejected the claim on its merits.  (Pimentel Decl.
Ex. 11 at 10-12.)  The trial court found that the defendant's
conclusory allegations were insufficient to meet his burden of

showing that his counsel's alleged failure to inform him of the
dismissal of the charges relating to the March incident deprived
him of his ability to make an informed decision whether to
testify.  Defense counsel submitted a detailed affidavit that
the trial court credited in view of his familiarity with the
trial.  Defense counsel swore that she discussed with the
defendant throughout the trial the advantages and disadvantages
of testifying and would "never rest the defense case until I ask
my client, once again, whether or not he will testify."
(Pimentel Decl. Ex. 10 at ¶ 10.)  After the court ruled that the
charges relating to the March incidents would not be submitted
to the jury, defense counsel stated that she believed even more
that the defendant should not testify and that, before she
rested the defense case, she "believe[d] that [she] discussed
with [the petitioner] the impact of that ruling on his decision
to testify."  (Pimentel Decl. Ex. 10 at ¶ 10.)  The court then
noted the evidence of the March incidents was before the jury in
any event, and the prosecutor could have cross-examined the
defendant about them, if the defendant had decided to testify.
The court concluded that the defendant had failed to show that
there was any reasonable possibility that his allegations were
true.  (Pimentel Decl. Ex. 11 at 12.)

     The trial court's rejection of the petitioner's claim was
not contrary to, or an unreasonable application of, clearly

established federal law.  When a petitioner's affidavit alleging
that his defense counsel denied him his right to testify is
"self-serving and uncorroborated" and defense counsel makes a
sufficiently detailed and credible affirmation to the contrary,
a district court can deny a 28 U.S.C. § 2255 petition for habeas
relief without a hearing, because the petitioner has not shown
that his counsel made a serious error under Strickland's first
prong.  See Rosario-Dominguez v. United States, 353 F. Supp. 2d
500, 518-19 (S.D.N.Y. 2005); see also Chang v. United States,
250 F.3d 79, 84-86 (2d Cir. 2001).  Because the state trial
court followed a procedure and reached a conclusion that was not
an unreasonable application of clearly established Supreme Court
precedent, the petitioner's claim is denied.

     In his sixth claim, the petitioner contends that his
defense counsel's ineffective assistance denied him the right to
challenge the constitutionality of his predicate offense
conviction.  The petitioner contends that defense counsel told
him "it's just a formality, admit to the conviction" (Pet'r's
Traverse 26) and accordingly he did not know he had the right to
contest the constitutionality of his prior conviction.  In
denying the petitioner's § 440.20 motion to vacate his sentence,
the state court rejected the petitioner's claims that (1) he had
not made a knowing and voluntary waiver of his right to
challenge the constitutionality of the prior conviction; (2) his

defense counsel failed to provide him effective assistance regarding his right; and (3) his predicate felony conviction was unconstitutionally obtained.

In support of his § 440.20 motion, the petitioner made a self-serving claim unsupported by anything but his own affidavit, while his defense counsel denied the allegations in her own declaration.  The record reflects that the trial court read to the defendant the accusation of his second violent felony offender status and provided him the opportunity to consult with counsel to understand the accusation.  (Sentencing Tr. 3.)  After being given the opportunity to consult with his lawyer, the petitioner stated that he did not think there were any constitutional issues.  (Sentencing Tr. 4.)  The trial court rejected each of the petitioner's claims as refuted by the record and found no viable constitutional challenge to the prior conviction.  Allegations of ineffective assistance of counsel unsupported by any evidence on the record in the face of a sufficiently credible denial by defense counsel may be dismissed by a habeas court without a hearing.  See Rosario-Dominguez, 353 F. Supp. 2d at 518-19.  Therefore, the trial court's decision to reject these claims was not contrary to, or an unreasonable application of, Strickland or any other clearly established federal law.

CONCLUSION

For the reasons explained above, the petition pursuant to 28 U.S.C. § 2254 is **denied**.  The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) because the petitioner has failed to make a substantial showing of the denial of a constitutional right.  The Clerk is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

Dated:    **New York, New York**
          **December 9, 2009**

                                         **John G. Koeltl**
                              **United States District Judge**